## LEAVENWORTH SAVINGS & TRUST CO. v. NEWMAN et al.

### No. 573.

District Court, W. D. Missouri, W. D.

Oct. 1, 1931.

Byron Spencer (of Langworthy, Spencer & Terrell), of Kansas City, Mo. (Lee Bond, of Leavenworth, Kan., on the brief), for plaintiff.

John W. Coots, Jr., of Platte City, Mo., and Chas. W. German, of Kansas City, Mo., for defendants.

OTIS, District Judge.

This case has had a long history. Originally, on May 2, 1924, it was filed as an action at law. Thereafter, on proper motion, it was transferred to the equity docket, and a bill of complaint in equity was substituted for the original petition at law. A motion to dismiss the bill for want of equity was filed by the defendants, or some of them, and was sustained by this court. From the order dismissing the bill, the plaintiff appealed. On appeal, the order of dismissal was reversed, and the case was remanded for further proceedings. See Leavenworth Savings & Trust Co. v. Newman (C. C. A.) 23 F.(2d) 835. Thereafter the case came on for trial, and was tried and submitted.

The general nature of the case is as follows:

The McComas Hydro-Electric Power Company was organized for the purpose of erecting in Platte county, Mo., a hydro-electric power plant. To secure funds for that purpose, it issued mortgage bonds in the principal sum of $35,000, payable in ten years, bearing interest at the rate of 6 per cent., payable semiannually. These bonds were purchased by the plaintiff, and were secured, not only by a deed of trust, but also by a guaranty signed by the stockholders of the debtor corporation. That guaranty was as follows:

"Whereas, McComas Hydro-Electric Power Company has by proper order of record directed the issuance of bonds to the sum of not to exceed Thirty-five Thousand Dollars, and a mortgage upon its plant and property to secure the payment of the same; and

"Whereas, the bonds can be placed provided the bondholders are assured by the stockholders that the net income from the plant will be used to pay the bonds and not to pay dividends until the bonded indebtedness is all paid; and

"Whereas, it is deemed prudent to make this guarantee of payment of the bonds and interest thereon as they respectively fall due so that the said bonds can be sold near home.

"Now, it is agreed, by the undersigned stockholders of said company that they will, and do hereby guarantee that all bonds issued under said order and all interest accruing on the same will be paid when the same become due respectively, and that no dividends will be paid from the income of said plant until all said bonded indebtedness has been paid in full, and that all the income from said plant, except necessary running expenses,

maintenance, taxes and insurance and salaries and wages of employees necessary to the business, shall be applied to a fund for the purpose of retiring said bonded indebtedness as fast as the same can be retired. No one signer's liability shall exceed thirty-five hundred dollars."

Interest payments on the bonds were duly made semiannually until August 4, 1923, when there was default. Following the default, the whole debt was declared due and payable (as was provided for in the deed of trust), the deed of trust was foreclosed, and the property covered by it was sold. From that sale $315 was realized, out of which, when the expenses of the sale had been deducted, a balance of $80.74 was left, which was applied to the reduction of the principal debt. Plaintiff then proceeded to endeavor to collect on the guaranty, and did collect from various of its signers the sum of $30,-142.24. A balance of $6,985.40 was still uncollected at the time of the institution of this suit. The purpose of this action is to recover from the signers of the guaranty (and from the heirs of a deceased signer) this balance. The amount sought to be recovered from each of the original signers still parties to this suit is the difference between what, if anything, they may have paid on the guaranty and $3,500, together with interest upon any unpaid balance. The amount which was sought to be recovered from the heirs of the deceased signer is six-sevenths of a total amount of $3,500, with interest thereon.

The defendants are in two classes, those who were original signers constituting one class, and those who are heirs of a deceased signer constituting the second class. The defense made by the first class of signers is also made by the second class, and there are certain additional defenses which are made by the second class of defendants. The liability of the first class of defendants will herein first be considered.

■ 1. There is no controversy but that all of the defendants in this class did sign the guaranty hereinbefore set out. No contention is made by any of them that he is not liable on the guaranty. The defense is that full payment has been made by each of them, and that thereby the admitted liability was extinguished.

It appears that prior to August 3, 1923, when default was declared by the plaintiff, semiannual interest payments were regularly made by the debtor corporation. Notice would be sent to that corporation by the plaintiff that interest was about to fall due. Plaintiff would then receive from the debtor corporation a draft for the amount of such interest. The defendants now say that, while the interest was thus paid by drafts from the corporation sent to the plaintiff, the amount of each payment was made up by contributions from them to the corporation, and that thereby each of them reduced to the amount paid by him his maximum $3,500 liability under the guarantee.

From a consideration of all the evidence in the case, including the admissions made in the answer of the defendants, the stipulation of the parties as to the facts, and the testimony of witnesses, I think only one conclusion is possible, and that is that the defendants are not entitled to any deductions from the amount due by them under the guaranty by reason of advances which they made to the corporation. Those advances were made by them as stockholders of the corporation, and for the purpose of preventing default by it and enabling it to continue as a going concern. They made no payments to the plaintiff under their guaranty. They made no payments to the plaintiff at all. The only payments of interest which the plaintiff received were from the corporation to which the stockholders had loaned money in order that it might make such payments. The plaintiff had no notice of any intention by the signers of the guaranty that such advances made by them were to be deducted from their liabilities under the guaranty. There was no meeting of minds between the plaintiff and the defendants to the effect that the guarantee was being whittled away by these advances. It is inconceivable that the plaintiff would have agreed to any such arrangement. An arrangement of that character would have meant that with each recurring interest due day the security of the bondholders would have been growing less. As the transactions were carried on, the plaintiff had no knowledge that the debtor corporation was defaulting in interest payments, and indeed it was not defaulting. Had the plaintiff known that the debtor corporation was defaulting, as defendants now contend it was, it (or the bondholders) would have declared, as they might have done, the principal due and have foreclosed the deed of trust. There was no foreclosure, because there was no notice to the plaintiff of any default. The plaintiff was led to believe, and was justified in believing, that the principal debt was at all times secured, not only by the deed of trust, but also by the guaranty and the full amount of that guaranty. No

liability had attached as to any guarantor prior to the debtor corporation's default. The pertinent rule of law is thus stated in 28 Corpus Juris, at page 990: "The liability of an absolute guarantor attaches immediately upon the breach of the contract by the principal, although the guarantee has not then suffered actual injury by reason of the default. In the case of a guaranty of payment the guarantor's liability accrues on the date the guaranteed debt or a part thereof becomes due according to the terms of the contract, and the principal fails to pay. * * *"

I think there can be no doubt that the defendants in this first class of defendants are liable for such an amount not to exceed $3,500 as to each of them, plus interest, as they did not pay after August 3, 1923, upon the guaranty.

2. One of the original signers of the guaranty was J. F. Drais, who died intestate February 4, 1920, and whose estate was closed in the probate court of Platte county December 19, 1922, at which time there was distribution to each of his heirs, now defendants in this case and belonging to the second class of defendants, of an amount in excess of $5,000. The estate had been closed and distributed prior to August 3, 1923, and therefore prior to the time when there was any default by the debtor corporation, and prior to the time when there was any amount due under the guaranty by any of the signers thereof.

In addition to the defense made by all of the defendants and discussed in subdivision 1 of this memorandum opinion, and therein resolved against the defendants, this class of defendants makes the following further contentions as grounds for their nonliability: First, that J. F. Drais in his lifetime would not have been liable (and that, therefore, his heirs are not now liable) upon the guaranty, for that after it was signed by him it was altered in a material respect; second, that the guaranty was from its inception invalid, for that the project for which the principal amount was borrowed was illegal; third, that a statute of limitations prevents recovery as against the defendants in this class. I consider these several defenses seriatim.

■ A. The evidence does clearly disclose the fact that, after the guaranty was signed by J. F. Drais, and indeed by all except one of the signers, there was added to it the concluding sentence, to wit: "No one signer's liability shall exceed thirty-five hundred dollars."

But the defense made in this connection is without avail to the defendants, for the reason that the evidence clearly discloses the fact that this alteration in the guaranty was made with the full knowledge and consent of J. F. Drais and all of the signers, and that the guaranty as modified was delivered to the plaintiff in its modified form by Mr. Drais and others of the signers. Under such circumstances, were he living and defending, he could not be heard to say that he was not bound by the modified guaranty nor can his heirs be so heard.

■ B. The defense based upon the alleged illegality of the project for which the borrowed money was expended is without merit. There is some suggestion in the record that, after this money was borrowed, it was used, or most of it was used, in building a dam in connection with the hydroelectric project of the debtor corporation, and that, when the dam was constructed, it was of a height not authorized by law. But this unlawful act of the debtor corporation was subsequent to the negotiation of the loan, the sale of the bonds, the signing of the guaranty, and the giving of the deed of trust. Certainly it could have no retroactive effect to invalidate any of those prior transactions.

■ C. The theory of the third of the special defenses made by the second class of defendants is that under the Missouri statutes plaintiff could have filed with the probate court of Platte county its claim against the estate of J. F. Drais, and that it had one year in which to file that claim, and that, failing to file it within that year, it is now foreclosed from proceeding against the heirs. I think that this defense also is not good.

At the time of the death of J. F. Drais, and when his estate was in course of probate, nothing was due from any of the signers of the guaranty under the guaranty. There had not yet been default by the debtor corporation, and such default was a condition precedent to the maintenance of any demand against the signers of the guaranty. The statute of limitations, upon which the defendants of the second class rely, has no application to such a contingent liability as that which at the time of his death existed in favor of the plaintiff against J. F. Drais under and because of the guaranty (Rev. St. Mo. 1929, § 183). See Tenny's Adm'r v. Lasley's Adm'rs, 80 Mo. 664; City of Springfield v. Clement et al., 205 Mo. App. 114, 225 S. W. 120.

Certain other contentions have been made by the defendants in the second class in addition to those herein specifically discussed. They have been considered and each of them is resolved against the defendants in this class.

I make the following specific findings of facts:

I. I find that all of the original signers of the guaranty referred to in the pleadings and introduced in evidence, who are still parties to this proceeding, did sign the guaranty, and that with full knowledge of all its contents as it now appears, and fully consenting thereto, they caused it to be delivered to the plaintiff.

II. I find that on August 3, 1923, the McComas Hydro-Electric Power Company made default in the payment of interest due on the bonds theretofore issued by it and involved in this case, and that thereupon holders of the bonds, acting through the plaintiff, declared the whole debt evidenced by the bonds and secured by the deed of trust and guaranty due and payable, and that thereafter the property covered by the deed of trust was sold at a foreclosure sale, and that the net proceeds of such sale, to wit, $80.74, were applied in the reduction of the principal debt.

III. I find that the several signers of the guaranty, or some of them, paid to the plaintiff, upon the guaranty, a total sum of $30,142.24, leaving a balance unpaid and due under the guaranty of $6,985.40.

IV. I find that none of the signers of the guaranty, prior to August 3, 1923, had paid any amounts under the guaranty by which the maximum liability of any one of them under the guaranty was in any amount reduced.

V. I find that each of the original signers of the guaranty, now parties to this proceeding, did pay upon his liability under the guaranty the amounts stipulated by the parties as having been paid by them.

VI. I find that J. F. Drais, one of the signers of the guaranty, died intestate on February 4, 1920; that he left as his sole heirs the defendants William T. Drais, Ella St. John, Elisa Shackelford, Hattie Drais, Annie Lee Taylor, Rose Wilson and James A. Drais; that of these Ella St. John has since and before the trial of this case died; that the estate of J. F. Drais, deceased, was administered and closed in the probate court of Platte county December 19, 1922, and thereafter distributed to the defendants hereinbefore named; and that each of them received in such distribution an amount in excess of $5,000.

### Conclusions of Law.

I. I conclude as a matter of law that each of the signers of the guaranty referred to in the above findings of facts, and who was at the time of the trial of this case still a party thereto, is liable to the plaintiff for such part of $3,500 as has not already been paid by him to the plaintiff, together with interest upon such unpaid balance.

II. I conclude as a matter of law that each of the above heirs (excepting Ella St. John) of J. F. Drais, deceased, named in the above findings of facts, is liable to the plaintiff in the amount of $500, being one-seventh of $3,500, with interest thereon.

A decree in accordance with this memorandum opinion and the above findings of facts and conclusions of law may be prepared by counsel for the plaintiff and submitted to the court for approval and entry.