IVERS & POND PIANO COMPANY, INC., Appellant, v.
PECKHAM, Respondent.

*November 30, 1965—January 4, 1966.*

For the appellant there was a brief by *Loeb & Cady*, and oral argument by *Andrew L. Somers, Jr.*, all of Madison.

For the respondent there was a brief by *Oldenburg & Peckham* and *Verlin H. Peckham*, all of Madison, and oral argument by *Verlin H. Peckham*.

HEFFERNAN, J. The trial court found that Robert H. Hoyman, agent for the piano company, knew that the $2,000 paid on May 12, 1961, originating with the defendant, Ellsworth L. Peckham, was for the purpose of

satisfying the guaranty contract and, therefore, held that the defendant discharged his guaranty by payment. We deem that the court applied the correct rule of law. Where a creditor accepts payment from a third person knowing it came from the guarantor, the payment must be applied in satisfaction of the guaranty.

". . . if the creditor is aware of the source of the payment, he should apply it to the note guaranteed by the surety." *Sorge Ice Cream & Dairy Co. v. Wahlgren* (1965), 28 Wis. (2d) 220, 226, 137 N. W. (2d) 118.

". . . when he so pays, the creditor must apply the payment on the indebtedness guaranteed, as he must where payments are made on the contract of guaranty to the creditor by the guarantor through the agency of a third person, of which facts the creditor has knowledge." 38 C. J. S., Guaranty, p. 1249, sec. 79.

The trial judge made the finding that Hoyman was the agent for Ivers & Pond, that the agent, Hoyman, was told by the son that the money came from the guarantor, and that Hoyman knew payment was made for the purpose of satisfying the guaranty.

These findings of the court must be sustained on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Bie v. Ingersoll* (1965), 27 Wis. (2d) 490, 493, 135 N. W. (2d) 250; *Kirchen v. Gottschalk* (1965), 26 Wis. (2d) 123, 125, 131 N. W. (2d) 885; *Rische Construction Co. v. May* (1961), 15 Wis. (2d) 123, 127, 112 N. W. (2d) 165.

There was evidence that Linter, the credit manager of the piano company, had told the son that his account was out of line and that they would "have to go to my father," the guarantor. Shortly thereafter, Hoyman, the sales agent for Ivers & Pond, appeared at the son's place of business and stated that he wanted the $2,000 or the son would get no more merchandise. Hoyman admitted that he knew the son would have to get the $2,000 from the father. There was evidence that Hoyman stated he would not leave town until he got the $2,000 and that he

was waiting at the son's place of business to see the check that was obtained from the father.

Some of the facts stated above are minimized or discounted by the plaintiff, yet there is no testimony in direct contradiction to these facts. In any event, even to the extent that there is conflict in the testimony, it is apparent that the court's finding, that Hoyman knew the source of the $2,000 payment, was not contrary to the great weight and clear preponderance of the evidence. The finding is supported by the evidence and must be sustained.

However, though Hoyman, the agent, knew that the father in fact made the payment, was that knowledge imputable to the principal, Ivers & Pond? We conclude that it was. There is evidence to support this conclusion. The finding is not contrary to the great weight and clear preponderance of the evidence.

Where an agent has authority to deal in general with the subject matter of a transaction, knowledge that he gains in the course of that transaction is imputable to the principal, and he is charged with the consequences of that knowledge. (See 3 Am. Jur. (2d), Agency, p. 635, sec. 273; 3 C. J. S., Agency, p. 194, sec. 262.) This court has stated the rule in *Johnson v. Associated Seed Growers, Inc.* (1942), 240 Wis. 278, 282, 3 N. W. (2d) 332:

". . . the principal is chargeable with and bound and affected by such knowledge and notice as his agent received in relation to the matter over which the authority extended while acting within the scope of his authority in negotiating or attending to a particular transaction."

The same case pointed out that the agency authority need not be expressly proved when it appears that a contract negotiated by a putative agent on behalf of a principal was acquiesced in and performed. The knowledge of an agent may be imputed to a principal irrespective of whether the agency is founded on express or implied authority.

In the instant case, it is not denied that the representative of Ivers & Pond was the agent for sales purposes. It is equally obvious that his duties entailed the collection of past-due accounts. When Peckham (the son) decided to go into the piano business, he wrote to Ivers & Pond; and Hoyman was sent, as the piano company's representative, to outline the conditions under which a future course of dealings might be possible. He ascertained the son's credit standing and advised him that he could not be afforded credit privileges on an open-account basis without a guaranteed line of credit.

After the course of business between the parties resulted in a substantial indebtedness, the son was informed by the credit manager for Ivers & Pond, that "the figure . . . was just way out of line" and "they would have to go to my father to satisfy his part of it." Thereafter, the son was visited by Hoyman, who announced that he had been told not to leave Madison until he had the $2,000.

The entire course of relations between Ivers & Pond, Peckham (the son), and Hoyman leads to the inescapable conclusion that Hoyman was at least clothed with the powers of a general agent under the doctrine of apparent authority. This court has stated that three elements are required to establish apparent authority: (1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be charged; and (3) reasonable reliance thereon by a third party. *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 560, 269 N. W. 309; *Sell v. General Electric Supply Corp.* (1938), 227 Wis. 242, 248, 278 N. W. 442. One standard work on agency states:

". . . apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or to make representations as his agent." Seavey, Law of Agency (hornbook series), p. 13, sec. 8.

The undisputed facts are sufficient to establish that Hoyman was clothed with apparent authority to nego-

tiate generally in regard to all aspects of the dealings between the parties and, specifically, the piano company knew of, and through its credit manager directed, collection of the guaranty. Hoyman stated he was directed to not leave town until he got the $2,000.

While a finding of express agency is not necessary to the determination of this case, the facts are sufficient to establish an express agency to collect the guaranty.

The trial judge also inferred that the piano company had actual knowledge of the collection of the amount of the guaranty. He found that, after the $2,000 payment, no further credit was extended to the plaintiff's son. While conflicting inferences can be drawn from this stoppage of credit, it is clear that it was the trial judge's conclusion that Ivers & Pond did so because it knew its recourse under the guaranty agreement was exhausted. If not, why did it cease to extend credit? It should also be noted that no further demand was made upon the father, although the son remained indebted to the piano company in amounts up to $3,500 for almost a year until the time of bankruptcy. This finding by the trial judge also supports the inference of knowledge of the payment. This court said in the *Estate of Beale* (1962), 15 Wis. (2d) 546, 556, 113 N. W. (2d) 380:

" 'It is the function of the trial court, in cases tried to the court, to draw such inferences from the established facts as deemed proper, and the supreme court cannot disturb the same unless they are against the great weight and clear preponderance of the evidence.' "

Hence, we conclude that Hoyman was an agent whose knowledge that the payment was made by the father was imputable to Ivers & Pond. We also conclude that the evidence supports the inference drawn by the trial judge that the piano company had actual knowledge of the payment.

We therefore conclude that Ellsworth Peckham's contract of guaranty was discharged by payment.

*By the Court.*—Judgment affirmed.