**WARRIOR CONSTRUCTORS, INC., Appellant,**

v.

**The SMALL BUSINESS INVESTMENT COMPANY OF HOUSTON, Appellee.**

**No. 1244.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 17, 1976.

Rehearing granted in part and Rehearing Denied in part with opinion, April 14, 1976.

William M. Coats, Wilson & Guest, Houston, for appellant.

Robert L. Hines, Houston, for appellee.

CURTISS BROWN, Chief Justice.

This is a suit by a creditor against a partial guarantor to collect on a note on which the debtor has defaulted.

The Small Business Investment Company of Houston (SBIC or appellee) filed suit against Warrior Constructors, Inc. (Warrior or appellant) to recover the sum of $35,000, which was the remaining unpaid principal on a $60,000 note that Warrior had guaranteed to the extent of $50,000. After a non-jury trial, the trial court rendered judgment that SBIC recover $30,000 in principal, plus interest thereon from the date of the acceleration of the note, along with attorney's fees and the costs of a previous suit by SBIC against the debtor. Warrior has perfected this appeal.

Most of the facts relevant to this appeal have been stipulated by the parties and are set out in their "Agreed Statement of the Case." On April 14, 1966, the corporate predecessor of National Electric Corporation (National) borrowed $60,000 from SBIC and executed a promissory note in that amount payable to SBIC. The note called for interest at 8% to be paid quarterly as it accrued, and for the principal to be paid in twenty-four consecutive quarterly payments of $2,500 each. The first principal payment was due on April 1, 1967. The note also contained acceleration provisions in the event of default, calling for 10% interest on the unpaid balance and attorney's fees in the amount of 10% of the principal and interest.

Also on April 14, 1966, Warrior executed a written Guaranty Agreement in which it unconditionally guaranteed the prompt payment of the aforementioned promissory note "to the extent of $50,000.00 principal, plus all accrued interest on the sum of $50,000.00 principal, and all costs and expenses, including attorney's fees and Court costs, for which the Borrower may be or become liable, and which may arise in the enforcement of this guaranty."

The principal payments due April 1, 1967 and July 1, 1967 were paid by a Warrior check dated July 21, 1967. This $5,000 check was made payable jointly to National and SBIC, was endorsed without restriction by National, and was forwarded by letter dated July 21, 1967, along with a $2,400 interest payment, from Warrior to SBIC.

The cover letter, on Warrior letterhead and signed by Warrior's president, stated:

"Gentlemen:

Enclosed please find two checks; one check, No. 1544 is in the amount of $5,000.00 and the other check, No. 1545 is in the amount of $2,400.00. Both checks are drawn on behalf of National Electric Corporation and made payable jointly to National Electric Corporation and your company.

The subject checks are being forwarded to you to be applied against that certain loan, made by your company to National Electric Corporation, which loan was in the amount of $60,000.00.

It is understood by Warrior Constructors, Inc. that the check for $2,400.00 will be applied against interest that has accrued on the subject loan and that the check for $5,000.00 will be applied to reduce the principal amount of the loan, and the following terms and conditions are imposed as conditions precedent to your negotiation and/or transfer of the checks:

The $2,400.00 will be applied against accrued interest, as required. The $5,000.00 will be applied against the principal amount of the loan and will reduce Warrior Constructors, Inc.'s liability, if any, as a surety by that same amount, i. e. by $5,000.00.

If the above stated terms and conditions are acceptable to your Company, negotiate and/or transfer the checks at your convenience. If you, for any reason, do not wish to accept the terms and conditions as set out above, then return the subject checks to this office, to the attention of the undersigned.

Yours very truly,

WARRIOR CONSTRUCTORS, INC."

By a letter dated July 28, 1967, SBIC advised Warrior that it would accept the July 21, 1967 checks subject to the conditions set out in the cover letter, but that SBIC

"will not be bound by these conditions with regard to any subsequent payments of principal and/or interest which may become due on the National Electric Cor-

poration obligation. With regard to such future payments, The Small Business Investment Company of Houston reserves the right to require that such payments be made directly by National Electric Corporation. . . . "

Over the next two years an additional $20,000 in principal and $8,800 in interest were paid by checks which were endorsed by, and paid to, SBIC. Every payment (and tender of payment) of principal or interest to SBIC was made in the manner described above; i. e., was made by Warrior check and with Warrior funds, with each check made jointly payable to National and SBIC, with each check endorsed without restriction by National prior to delivery to SBIC, and delivered to SBIC by Warrior with a cover letter on Warrior letterhead signed by a Warrior official identical to the letter set out above except for the amounts of the checks. In this manner Warrior ultimately paid, and SBIC accepted, a total of $25,000 in principal payments and $11,200 in interest payments.

By a letter dated July 30, 1969, National was given notice of SBIC's election to accelerate the entire unpaid balance of principal and interest because of numerous undisputed "events of default" by National. After acceleration Warrior continued to tender the quarterly payments, each of which was returned by SBIC, until this suit was filed in 1971. SBIC has previously obtained a judgment against National for the principal amount of $35,000, plus interest, attorney's fees, and costs, none of which has been paid by National. SBIC also obtained judgment against the co-guarantor of the note, which has likewise remained unpaid.

Appellant's first point of error asserts that the trial court erred in failing to hold that appellee was obligated to apply the principal payments to the guaranteed portion of the debt. The trial court held that appellee's written acceptance of the conditions upon which the first $5,000 of principal payments were tendered served to reduce appellant's guaranty obligation by that amount. However, the court concluded that "[a]ll other attempts by Warrior to reduce its guaranty obligation to SBIC were unilateral and never accepted by SBIC and did not serve to reduce the guaranty obligations of Warrior either as to principal, interest, attorney's fees or costs." In so holding the court erred. Warrior's efforts were not unilateral because they involved SBIC's acceptance and use of the funds. SBIC could not accept the benefits and avoid the burdens.

Whether a partial guarantor has the right to direct that a payment it makes on behalf of the debtor be applied to the guaranteed portion of the debt has not been answered in Texas. However, the issue has been addressed by courts in several other jurisdictions. In a few instances, courts have declined to reduce a guarantor's liability even though the funds which were ultimately used to pay off a portion of the debt originated in the guarantor. *See Leavenworth Savings & Trust Co. v. Newman,* 52 F.2d 813 (W.D.Mo.1931); *William Filene's Sons Co. v. Lothrop,* 243 Mass. 214, 137 N.E. 255 (1922); *Domergue v. Mayer-Israel Co.,* 161 Miss. 545, 137 So. 486 (1931). However, in each of the above cases not only did the payments to the creditor come directly from the debtor, but there was neither a direction that they be applied to the guaranteed portion of the debt nor any knowledge on the part of the creditor that such was the intention of the guarantor in advancing the funds.

In the instant case the creditor accepted the principal payments knowing that they originated in the guarantor and that it was the guarantor's intention that they be applied to reduce its liability on the guaranty. This is sufficient to require that the payments be applied to the guaranteed portion of the debt. *See Ivers & Pond Piano Co. v. Peckham,* 29 Wis.2d 364, 139 N.W.2d 57 (1966); *Coxe Bros. & Co. v. Milbrath,* 116 Wis. 102, 92 N.W. 560 (1902); *Bayer v. Lugar,* 106 App.Div. 522, 94 N.Y.S. 802 (1905), aff'd mem., 186 N.Y. 569, 79 N.E. 1100 (1906); *Hatch & Brookman v. Kula,* 194 Iowa 619, 190 N.W. 969 (1922); cf. *Texas Co. v. Schram,* 93 S.W.2d 544 (Tex. Civ.App.-Austin 1936, no writ); *N. O. Nel-*

*son Mfg. Co. v. Wallace,* 66 S.W.2d 505 (Tex.Civ.App.-Eastland 1933, writ ref'd). *See also* 38 C.J.S. Guaranty § 79 (1943); Annot., 57 A.L.R.2d 855 (1958).

Appellant's second and third points of error assert that, irrespective of the preceding issue, the endorsement and negotiation of their checks by appellee constituted an acceptance of the conditions on which they were submitted.

Whether the letters which accompanied the checks that appellant sent to appellee are construed as an offer to modify the existing Guaranty Agreement or as an offer to form a separate agreement, nonetheless each was an offer to create a binding contract. Appellant never owed appellee a duty to make the payments *on behalf of National,* so the tendered payments represented a sufficient detriment to the offeror to constitute valid consideration for a subsequent agreement between appellant and appellee.

■ It is universally recognized that a binding contract may be formed by the retention of or exercise of dominion over the thing offered. Restatement of Contracts § 72 (1932); 17 C.J.S. Contracts § 41e (1963); 17 Am.Jur.2d *Contracts* § 47 (1964); 1 S. Williston, Law of Contracts § 91D (3rd ed. 1957); 1 A. Corbin, Corbin on Contracts § 75 (1963). The cashing of appellant's checks by appellee was such an exercise of dominion over the funds as to constitute an acceptance of the conditions on which they were offered, notwithstanding any previous attempt to repudiate those conditions. Therefore, each time that appellee cashed one of the tendered checks it bound itself to reduce appellant's guaranty obligation by the amount of the check that represented payment on principal.

■ Appellant's fourth and fifth points of error assert that the trial court erred in assessing interest and attorney's fees against it. The rule is that a creditor who makes an excessive demand upon his debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt. *Collingsworth v. King,* 155 Tex. 93,

283 S.W.2d 30 (1955); *Ingham v. Harrison,* 148 Tex. 380, 224 S.W.2d 1019 (1949). Similarly, the creditor is not entitled to interest on the debt until the date of the trial court's judgment. *Ingham v. Harrison, supra; Keystone Pipe & Supply Co. v. Zweifel,* 127 Tex. 392, 94 S.W.2d 412 (1936).

■ It is irrelevant that appellant, in the position of a debtor here, did not tender to appellee the proper amount due, for the rule is that tender is excused where the creditor has clearly indicated that he is unwilling to accept what is due in discharge of the debt. *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942); *Ada Oil Co. v. Logan,* 447 S.W.2d 205 (Tex.Civ.App.-Houston [14th Dist.] 1969, no writ); *Kriegel v. Scott,* 439 S.W.2d 445 (Tex.Civ.App.-Houstin [14th Dist.] 1969, writ ref'd n. r. e.).

■ In letters dated September 3, 1970, October 28, 1970, and January 12, 1971, and signed by appellee's legal counsel, appellee advised appellant that "no less than complete payment of the total unpaid balance of principal, interest and attorney's fees will be accepted. . . ." At the time these demands were made, the total unpaid balance of principal was $35,000. However, appellant was only liable for $25,000 of that amount. Given the unqualified nature of appellee's demands, appellant could reasonably have assumed that a tender of $25,000 in principal would not be accepted. Therefore, appellant was excused from making such a useless tender. Indeed, in such a situation the effect is the same as if the appellant had actually tendered to appellee the correct amount due. *Ingham v. Harrison, supra.* Appellee does not argue that appellant's failure to pay or tender the correct amount in a lump sum was due to some other reason than the excessiveness of the appellee's demands. Rather, appellee has simply taken the erroneous position that its demands were not excessive. Therefore, it was error to hold appellant liable for attorney's fees and for interest prior to the date of the trial court's judgment.

Appellant also contends that there was an overpayment of $3,250.10 in interest to

appellee up to the time appellee stopped accepting payments, and that this overpayment should be credited to any remaining interest obligation appellant may have. This contention is based on the fact that under the Guaranty Agreement appellant was obligated to pay interest only on the sum of $50,000, whereas the interest payments it actually made were based on the full amount of the note. This argument is essentially that, as with the principal payments, the interest payments made by appellant should be applied to the guaranteed portion of the obligation.

■ The condition to appellee's acceptance of the funds, as stated in appellant's cover letters, was only that appellant's liability as guarantor be reduced by the amount of the *principal* payment. A reduction of the guaranty obligation by the amount of the interest payment was not made a condition. Moreover, the language of appellant's cover letters implied that it did not contemplate such a reduction. Where appellant had meant for its liability as surety to be reduced (i. e., by principal payments), it had said so. Therefore, from its failure to do so with regard to interest payments arises the implication that it did *not* intend for those payments to effect such a reduction. Thus, while appellee knew that the interest payments originated in appellant, the implication was that appellant did not intend a corresponding reduction of its guaranty obligation. In this situation appellee was not obligated to apply the payments to the guaranteed portion of the debt. We hold that there was no overpayment of interest by appellant which should be applied to its remaining interest obligation.

■ By way of a cross point, appellee asserts that the trial court erred "in determining that the agreement of appellees to lower the guaranty liability by the principal sum of $5,000.00 should be credited to the note liability rather than to the guaranty liability." The conditions on which all payments were tendered were stated in appellant's cover letter as follows:

"The $5,000.00 will be applied against the principal amount of the loan and will reduce Warrior Constructors, Inc.'s liability, if any, as a surety by that same amount, i. e. by $5,000.00."

The trial court apparently interpreted appellee's written acceptance of these conditions as to the first $5,000 of principal payments to mean that $5,000 should be deducted from whatever amount appellant might ultimately owe under its contract of guaranty. For this reason the trial court awarded appellee only $30,000, even though the court was of the opinion that appellant's guaranty liability had not been reduced below the total remaining unpaid balance of $35,000. It is to this action of the trial court that appellee's cross point presumably refers. We disagree with the trial court's interpretation of the consequences of appellee's acceptance of the offers, and therefore sustain the cross point.

The terms of the Guaranty Agreement limited appellant's liability on the $60,000 note to the sum of $50,000. This was its maximum potential liability as guarantor. We hold that with each principal payment that was accepted by appellee on the condition that appellant's "liability . . . as a surety" be correspondingly reduced, only appellant's maximum potential liability was reduced. We have held that a total of $25,000 in principal payments was accepted on the conditions stated; therefore, appellant's maximum potential liability must be reduced by a like amount, from $50,000 to $25,000. Since the unpaid balance on the note is greater than $25,000, appellant is liable to the full extent of its remaining guaranty obligation.

The judgment of the trial court is reversed, and we here render judgment that appellee Small Business Investment Company of Houston recover from appellant Warrior Constructors, Inc. the sum of $25,000.00 as principal and the sum of $18.00 as costs for the previous suit by appellee against National Electric Corporation, together with 10% interest on said principal amount from May 6, 1971, until paid, and 6% inter-

est on said costs from May 6, 1971 until paid.

Reversed and rendered.

CIRE, J., not participating.

### ON MOTION FOR REHEARING

CURTISS BROWN, Chief Justice.

■ In its motion for rehearing appellee has pointed out to us that the $4,245.69 in attorney's fees awarded it by the trial court was not for work done in the instant case against appellant, but rather was for fees awarded it in its previous suit against National. The Guaranty Agreement between appellant and appellee provided that appellant unconditionally guaranteed the payment of

> "all costs and expenses, including attorney's fees and Court costs, for which the Borrower may be or become liable, and which may arise in the enforcement of this guaranty."

Although due to appellee's excessive demands appellant may not be held liable for any attorney's fees which arose in the enforcement of the guaranty, we feel that appellant must still be held contractually responsible for attorney's fees for which the borrower, National, has become liable.

We therefore sustained the fifth point of appellee's motion for rehearing and amend our former judgment to include the following:

> that appellee Small Business Investment Company of Houston recover from appellant Warrior Constructors, Inc. the sum of $4,245.69 as attorney's fees for the previous suit by appellee against National Electric Corporation, together with 6% interest on said attorney's fees from May 6, 1971 until paid.

In all other respects appellee's motion for rehearing is overruled.