ROBINSON 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00157-CV







Robert M. Robinson, Appellant



v.



State Farm Fire and Casualty Company, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT


NO. 151,778-C, HONORABLE OLIVER KELLEY, JUDGE PRESIDING







PER CURIAM


 Appellant Robert M. Robinson ("Robinson") appeals from a summary judgment in
favor of appellee State Farm Fire and Casualty Company ("State Farm"). Robinson asserts that the
trial court erred in granting summary judgment because material issues of fact remained for the court's
determination and because State Farm failed to establish its grounds for summary judgment as a matter
of law. We will affirm the judgment of the trial court.



BACKGROUND FACTS


 Robinson owned rental property at 1910 South 19th Street in Temple, Texas. He
maintained a policy of insurance on the property with State Farm. The policy provided coverage for water
damage, such as plumbing leaks, but did not provide coverage for "settling, cracking, bulging, shrinkage
or expansion of [the] foundation[]." On January 13, 1993, approximately a year after purchasing the
policy, Robinson provided State Farm with notice of a claimed loss resulting from a plumbing leak on the
property. State Farm paid benefits on the policy, the leak was repaired and the claim was closed. 

 In August of the same year, State Farm received a notice of assignment from Affiliated
Construction Specialist, Inc. (ACS) which included a notice of loss filed on Robinson's behalf. The notice
of loss reopened the original claim filed by Robinson. Robinson now alleged that the leak had caused
excessive damage to the structure and foundation of the property. State Farm contracted with Ed Simpson
(Simpson), an independent physical engineer to inspect the property. Simpson conducted his inspection
and concluded that the house had experienced significant foundation problems before the reported leaks,
that the plumbing leakage accounted for approximately 20% of the "elevation differential" and that
"conventional foundation underpinning and jacking repairs were required for correction of the foundation
distress due to all causes." Simpson noted that "[f]oundation repairs are not appropriate or necessary for
correction of only the minor plumbing leakage distortion." However, in an effort to address the overall
foundation distress, he recommended that piers be erected along the back wall of the house in the vicinity
of the area affected by the leakage.

 State Farm reviewed Simpson's report with Robinson and ACS and concluded that the
damage covered by the policy was valued at $12,001.56. State Farm issued a check for that amount
payable to Robinson, ACS, and the Temple Inland Mortgage Company. The check, accompanied by a
letter of transmittal providing a detailed estimate of the covered damage, was forwarded to Robinson. 
Without objection, Robinson, ACS and the mortgage company accepted, endorsed, and deposited the
check on November 9, 1993.

 In January 1994, State Farm was contacted by Michael Gray ("Gray"), Robinson's ACS
representative and notified that an ACS engineer had concluded that the plumbing leak had caused 90%
of the damage to the property. Ten days later, State Farm notified Robinson that it was invoking the
appraisal provision of the policy. (1) Robinson refused to participate in the appraisal process. On February
24, State Farm received a notice of claim from ACS stating that Robinson wanted to treat one of the
plumbing leaks as a new loss. State Farm informed Robinson that it would provide an additional four
months in lost rental payments and requested clarification on the claim. State Farm also requested that
Robinson file a proof of loss claim. Robinson never filed a proof of loss claim.

 In May 1994, State Farm notified Robinson that unless repairs were made on the property
before January 20, 1995, his contract of insurance would be canceled due to severe foundation problems
with the property. Robinson, ACS, and the mortgage company did not make the necessary repairs nor
did they return the funds previously tendered to them by State Farm. Robinson filed suit on January 6,
1995, alleging breach of good faith and fair dealing, breach of contract, and violations of the Texas
Insurance Code and various insurance regulations. On January 20, State Farm ceased its loss of rent
payments and canceled the policy. (2) Following court ordered completion of the appraisal process, the court
rendered summary judgment in favor of State Farm.



ANALYSIS


 The purpose of summary judgment is not to deprive a litigant of his right to a full hearing
on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. 
Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). The standards for reviewing a motion for
summary judgment are well established: (1) the movant for summary judgment has the burden of showing
that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable
to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548-49 (Tex. 1985). It is not the purpose of the summary judgment rule to provide either a trial by
deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it
clearly appears that only a question of law is involved and that there is no genuine issue of fact. Gaines
v. Hamman, 358 S.W.2d 557, 563 (Tex. 1962).

 In his initial point of error, Robinson asserts that summary judgment was improper because
a fact question exists as to whether there was a binding accord and satisfaction. An accord is an agreement
where one party agrees to give or perform something different from what he is obligated to give or perform,
and the other party agrees to accept the substituted performance in satisfaction of the obligation. Stevens
v. State Farm & Cas. Co., 929 S.W.2d 665, 674 (Tex. App.--Texarkana 1996, no writ) citing
Slaughter v. Temple Lumber Co., 307 S.W.2d 108, 114 (Tex. Civ. App.--Houston 1957, writ ref'd
n.r.e.). A satisfaction is the performance of such an agreement. Id. Hence, an accord and satisfaction
occurs when parties make an agreement to discharge a disputed obligation by a lesser payment that is
tendered and accepted. Jenkins v. Henry C. Beck Co., 449 S.W.2d 454 (Tex. 1969). It is well
established that all claims arising out of contracts, express or implied, may be the subject matter of an
accord and satisfaction, provided such contracts are not illegal. Texas & R. Ry. v. Poe, 115 S.W.2d 591,
592 (Tex. 1938).

 State Farm moved for summary judgment on the ground of accord and satisfaction and
asserted that following an investigation, it tendered the sum of $12,011.56 to Robinson in settlement of all
claims submitted by him. The summary judgment evidence reveals that the check was accompanied by a
transmittal letter which stated:



 [E]nclosed you will find State Farm's estimate and payment for the covered damage to
your home. This settlement is based off of the Simpson Engineering's Report. . . . Our
settlement is based on the conclusion that the plumbing leaks distorted the foundation in
the proximity of the leak. . . . The estimate provides for . . . six piers, along the back wall
of the dwelling in the proximity of the leaks and the cosmetic damage to each of the rooms
affected by the leaks.



(Emphasis added.) The transmittal letter also included an explanation of how the settlement amount was
reached, an engineer's drawing of the affected area, and a detailed estimate of the damages that were being
paid. The check was accepted without objection and endorsed by Robinson, his ACS representative, and
the mortgage company.

 A review of the summary judgment evidence reveals that (1) State Farm tendered a check
accompanied by a transmittal letter clearly stating that the sum was in settlement of Robinson's claim; (2)
that Robinson received the check and transmittal letter; (3) and that Robinson, ACS, and the mortgage
company endorsed, deposited, and used the funds in a manner different from the terms of the transmittal
letter. Moreover, in sworn deposition testimony, Robinson stated that he was aware of the presence of
other leaks on the property at the time that he endorsed the check. Following his endorsement, Robinson
gave the check to Gray for his endorsement. In turn, Gray was responsible for delivering the check to the
mortgage company for its endorsement. Robinson also testified that he received a letter from the mortgage
company stating that approximately $4000 would be returned to him for repairs and construction on the
property, but he never received the funds. Robinson admitted that he did not know the whereabouts of
the funds nor did he know if the funds had been spent by Gray or the mortgage company.

 Although there was no express language of accord and satisfaction, the facts and
circumstances in their entirety inescapably lead us to the conclusion that an implied contract existed among
the parties. Warrior Constructors v. Small Business Investment Co. of Houston, 536 S.W.2d 382,
386 (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ)(cashing of checks was exercise of dominion
over funds constituting acceptance of conditions associated with the checks). See City of Houston v.
First City Bank, 827 S.W.2d 462 (Tex. App.--Houston [1st Dist.] 1992, writ denied). In City of
Houston, First City Bank remitted checks to the City of Houston and the Houston Independent School
District in payment of taxes, interest, and penalties on a certain parcel of property. The letter transmitting
the checks specifically stated that the payments were only to be applied to taxes, penalties, and interest
under section 33.01 of the Tax Code. However, the taxing units applied the payments in a manner
inconsistent with that described in the transmittal letter. As a result, certain tax accounts were left
delinquent and a suit to collect ensued. The court of appeals held that the acceptance of the checks
resulted in the acceptance of the condition associated with the checks. The fact that the taxing units sought
to keep the monies and ignore the conditions under which the payment was made did not eliminate the
undisputed evidence that a contract governing the application of the remittance was made. Id. at 472.

 Similarly, because the mortgage company and ACS have chosen to keep the funds paid
by State Farm in settlement of Robinson's claim and to ignore the need to repair the property to avoid
cancellation, there remains indisputable evidence that a contract governing the application of the sum of
$12,011.56 was made. The acceptance of the check in the context of the previously described
circumstances constitutes an accord and satisfaction as a matter of law and therefore precludes any further
recovery by Robinson on these particular claims. The point of error is overruled. Because we have
concluded that State Farm was entitled to summary judgment on the basis of accord and satisfaction as a
matter of law, we need not address Robinson's additional points of error.



CONCLUSION


 The judgment of the trial court is affirmed.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: March 20, 1997

Do Not Publish

1.   The policy of insurance specifically requires the following:


Appraisal.  In case the Insured and this Company shall fail to agree as to the
actual cash value or the amount of loss, . . . on the written demand of either,
each shall select a competent and disinterested appraiser . . . .


* * *


Suit.  No suit or action on this policy for the recovery of any claim shall be
sustainable in any court of law or equity unless all of the requirements of this
policy shall have been complied with . . . . 
2. [2]  Robinson's policy only provided for loss of rent payments during the period that the insured
property was uninhabitable as a result of an insured peril. 


mate of the damages that were being
paid. The check was accepted without objection and endorsed by Robinson, his ACS repre