NO. 07-05-0200-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 17, 2006
_____

INTERSTATE HIGHWAY CONSTRUCTION, INC., AND
PACIFIC INDEMNITY COMPANY, APPELLANTS

V.

LANCO TURF & SEEDING, INC., APPELLEE
_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 90,213-A; HONORABLE HAL MINER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellants, Interstate Highway Construction, Inc. (Interstate) and Pacific Indemnity

Company (Pacific), appeal a summary judgment granted in favor of appellee, Lanco Turf

& Seeding, Inc. (Lanco). We affirm.

Factual and Procedural Background

Interstate contracted with the City of Amarillo to upgrade a runway at the Amarillo International Airport.[1]  Because portions of the work would be subcontracted, Interstate obtained a payment bond from Pacific to guarantee that subcontractors would be paid for the work they furnished.

Lanco entered into a subcontract with Interstate to seed, mulch, and water 80 acres at the airport.[2]  The Contract provided specifications for this subcontract work, which were specifically incorporated into the Subcontract, requiring that a "good stand of grass of uniform color and density" be established on the 80 acres.

Lanco began performing the work required under the Subcontract in April of 2002. After Lanco had seeded the acreage, Amarillo received significant rains.  Because of the rain, Interstate notified Lanco that the City was satisfied with the work and that watering would not be required.  Lanco submitted an invoice to Interstate that included a charge of $110,400 for seeding, mulching, and watering the 80 acres, in accordance with the terms of the Subcontract.[3]  Upon receipt of the invoice, Interstate requested credit from Lanco for

---

[1] Further reference to the contract between the City of Amarillo and Interstate will be by reference to the "Contract."

[2] Further reference to the contract between Interstate and Lanco will be by reference to the "Subcontract."

[3] The invoice actually identified $124,200 as the amount owed, which included seeding of an additional 10 acres that the parties agreed to separately from the Subcontract.  While the parties agreed that Lanco would perform this additional work, the parties dispute the amount of compensation Lanco is owed for performing this work.  As with the Subcontract, Interstate contends that Lanco is not entitled to payment for watering

2

the watering services that were not provided. Lanco refused to provide such credit. Interstate made a partial payment of $7,300, but did not pay the remaining balance of $116,900.

Lanco filed suit against Interstate and Pacific for breach of contract and quantum meruit. Interstate and Pacific filed answers in which they asserted the affirmative defense of unjust enrichment and counterclaimed for declaratory judgment, promissory estoppel, and breach of contract.

After discovery, Interstate and Pacific filed motions for partial summary judgment on their counterclaim for declaratory judgment. Lanco also filed a motion for summary judgment. The trial court granted Lanco's motion, denied Interstate's and Pacific's motions, severed Lanco's claim for attorney's fees, and ordered that Lanco recover from Interstate and Pacific, jointly and severally, $116,900, plus 18 percent interest per annum from June 26, 2002 until paid. It is from the summary judgment in favor of Lanco that Interstate and Pacific now appeal.

By their sole issue, Interstate and Pacific contend that the trial court erred in granting summary judgment in favor of Lanco. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970) (a general issue contending that the trial court erred in granting summary

---

services not provided on these additional 10 acres. Lanco contends that it is entitled to the "per unit" price identified in Schedule A of the Subcontract for the additional 10 acres. Thus, our determination of whether the Subcontract entitles Interstate to a credit for the watering that Lanco did not perform will also determine the amount of compensation due Lanco for this additional work.

3

judgment allows argument as to all grounds upon which summary judgment should have been denied).

## Standard of Review

A traditional summary judgment, such as the one granted to Lanco, is proper when the movant conclusively establishes that no genuine issue of material fact exists and, therefore, the movant is entitled to judgment as a matter of law.  See TEX. R. CIV. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  We review the granting of traditional summary judgment using the standards set out in Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985):

> (1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> (2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
>
> (3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews the summary judgment evidence of both parties, determines all questions presented, and renders the judgment that the trial court should have rendered.  Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). If the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed if any of the grounds in the motion are meritorious. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

4

## Contract Ambiguity

The goal of a court in construing a contract is to determine and give effect to the objective intention of the parties as expressed in the contract. See Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000). When a contract is worded such that it can be given a certain or definite legal meaning, it is not ambiguous and will be enforced as written. See id. However, a contract is ambiguous if the terms of the contract are susceptible to more than one reasonable interpretation. See Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Whether a contract is ambiguous is a question of law. Id. If a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the proper construction of the contract presents a genuine issue of material fact. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983).

The Subcontract defines the work to be performed by reference to the incorporated Schedule A, which provides that Lanco's "work" was to seed, mulch, and water the 80 acres. Paragraph 1 of the Subcontract places upon Lanco the responsibility to complete all of the work identified in Schedule A, specifically makes Schedule B incidental to Schedule A, and incorporates the terms and conditions of the Contract into the Subcontract. Paragraph 4 provides that Lanco "agrees to accept as full and final payment . . . the amounts of compensation as defined in Schedule A . . . ." Further, paragraph 4 provides that Lanco "agrees to accept such . . . payment . . . as final payment in consideration for the completion of all items, in full accordance with obligations and responsibilities of this Subcontract Agreement and the Contract as it applies to the

5

Subcontractor's work" (emphasis added). Paragraph 4 further provides that Interstate has the right to deviate or omit work from the Subcontract "as necessary to meet obligations under the Contract." Any change in the work that would decrease the compensation to Lanco "shall be as the parties agree."[4] Paragraph 5 of the Subcontract provides that Interstate agrees to pay for the performance of the work required under the Subcontract and that Lanco agrees to accept as its full and only compensation the sums of money properly owed to it and as set forth in the Subcontract and any documents incorporated into the Subcontract. Finally, in paragraph 26, the Subcontract incorporates "Schedule A to Subcontract: Listed Subcontract items of work, prices and methods of compensation therefor" and "Schedule B to Subcontract: Subcontract Special Provisions."

Schedule A provides that Lanco shall do all things necessary to perform the work described in Schedule A in accordance with the specifications and drawings contained in the Contract and that Lanco shall be paid in accordance with the prices set forth in Schedule A. As relevant to this appeal, Schedule A identifies item 39 as "T-901 [the specifications for the seeding work contained in the Contract] Seed & Mulch & Water." Item 39 contains a "plan quantity" of 80, a unit price of $1,380, and a subtotal for all 80 units of $110,400.

---

[4]The Subcontract contains a specific procedure imposing upon Lanco certain responsibilities should any changes to the work require additional compensation. However, the only provision that relates to a decrease in the compensation owed is the "as the parties agree" provision. This provision goes on to require Lanco to complete the work, even if a dispute arises, but in no way addresses a decrease in compensation arising after all items of work had already been completed.

Paragraph 13 of Schedule B provides that, "At the Contractor's option, Subcontractor will perform Item #39B – Watering to Stand.  The Contractor may elect to use all or none of the total quantity."  Interstate, in its appellate brief, also highlights paragraph 9 of Schedule B which states, "Contractor agrees to pay for all work performed by the Subcontractor, as directed by the Contractor, that is accepted by the Owner [City]."

When taken as a whole and attempting to give meaning to all of its provisions, the Subcontract envisions that the successful completion of the project is to be assessed by Lanco performing all of the work Interstate directed it to perform and by the City's acceptance of the work.  The Subcontract makes Lanco's watering of the 80 acres at the election of Interstate, but does not provide that Interstate's election to forego watering would effect the amount of compensation owed to Lanco, unless the parties agreed otherwise.  We acknowledge that Schedule A of the Subcontract includes watering as a component of the "work" required to be performed by Lanco.  However, the Subcontract further provides that Interstate had authority to alter the work required of Lanco and paragraph 13 of Schedule B specifically made Lanco's obligation to water subject to the election of Interstate.  Nothing in the Subcontract addresses or even implies that Interstate's election to forego components of the "work" defined by the Subcontract would affect Lanco's compensation, other than by agreement of the parties.  When viewed as a whole, the Subcontract provides that Lanco has performed the "work" required by the Subcontract if (1) Lanco performed all work as directed by Interstate, (2) Lanco did "all things necessary to perform the work" described in the Subcontract and in the Contract's specification T-901, and (3) Lanco's work was accepted by the City.  Upon completion of

7

the work, Lanco was entitled to the compensation identified in Schedule A as full and final payment. Thus, so long as Lanco performed all work that Interstate directed it to perform, the work conformed to the requirements of the Contract's specification T-901, and the work was accepted by the City, Lanco is entitled to the compensation identified in item 39 of Schedule A of the Subcontract.

Considering the Subcontract as a whole, we fail to see any provision that is susceptible to two or more reasonable constructions. Therefore, we conclude that the Subcontract is unambiguous and will enforce the Subcontract as written. See Gulf Ins. Co., 22 S.W.3d at 423. We construe the contract to unambiguously entitle Lanco to recovery of the full contractual compensation for the successful completion of the work. Further, the Subcontract indicates that the work is successfully completed if Lanco followed the directions of Interstate, conformed their work to the Contract's specifications, and the work was accepted by the City. The record reflects that Lanco fulfilled each of these obligations. Therefore, Lanco is entitled to the compensation identified in the Subcontract.

Because the Subcontract specifically governs Lanco's rights to compensation, we overrule Interstate and Pacific's affirmative defense of unjust enrichment. See Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000) (when a valid, express contract covers the subject matter of a dispute, there can be no recovery for unjust enrichment).

Interest

Interstate contends that Lanco is not entitled to interest under the Subcontract and that Lanco is further not entitled to attorney's fees. As the trial court severed the issue of

8

attorney's fees from the present dispute, that issue is not before us. The trial court also ordered interest from June 26, 2002 at a rate of 18 percent per annum until paid. Interstate and Pacific do not contest the amount of interest ordered by the trial court,[5] but rather contend that Lanco's refusal to grant a credit for the watering services not provided made a tender of payment for seeding and mulching futile and, as a result, the failure to pay is excused and an award of interest is improper.

Interstate and Pacific cite Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942), and Warrior Constructors, Inc. v. Small Business Inv. Co. of Houston, 536 S.W.2d 382, 386 (Tex.Civ.App.–Houston [14th Dist.] 1976, no writ), to support their contention that their failure to pay was excused where it was assumed that the partial tender would not have been accepted. However, we find these cases inapposite. In Kinzbach Tool, the excused party actually tendered the proper amount due in a timely fashion, but this tender was rejected by the payee. The court held that the payee's rejection of the proper payment excused the payor's failure to make subsequent payments because, "The law does not require an actual tender when the party to whom the money is due has signified in advance that he will refuse to accept it." Kinzbach Tool Co., 160 S.W.2d at 514. In Warrior Constructors, Inc., the court held that tender is excused where a creditor has clearly indicated that he is unwilling to accept what is due in discharge of a debt. See Warrior Constructors, Inc., 536 S.W.2d at 386. However, in each of these cases, the payor was excused from tendering payment because the payee had refused to

_____

[5] Paragraph 11 of Schedule B of the Subcontract provides that "All invoices are due 45 to 60 days after the invoice date. Any past due unpaid sums . . . shall bear interest at the rate of 18% per annum until paid."

9

accept the amount that was actually due. Here, Interstate never offered payment to Lanco in the amount that was due under the Subcontract.

Additionally, Interstate and Pacific contend that it should be excused from interest on the partial payment that it was willing to tender because it was evident that such a tender would not be accepted by Lanco. However, as evidence for this proposition, Interstate and Pacific cite Lanco's refusal to give a credit for the watering services, Lanco's continued billing and demand letters for the full amount owed under the Subcontract, and summary judgment evidence that Interstate and Pacific would have paid an invoice for $58,400 if one had been received. We fail to see how any of this evidence establishes that Lanco would not have accepted a partial payment of the amount owed had such a payment been offered.

Therefore, having found that payment was not tendered by Interstate and Pacific in the amount due and payable to Lanco in a timely fashion and that Interstate and Pacific have failed to establish that their failure to make such a timely tender was excused, we affirm the trial court's award of interest to Lanco.

Conclusion

We affirm the judgment of the trial court.

Mackey K. Hancock
Justice

10