NO. 07-05-0200-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



APRIL 17, 2006


 ______________________________



INTERSTATE HIGHWAY CONSTRUCTION, INC., AND


PACIFIC INDEMNITY COMPANY, APPELLANTS



V.



LANCO TURF & SEEDING, INC., APPELLEE


_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 90,213-A; HONORABLE HAL MINER, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellants, Interstate Highway Construction, Inc. (Interstate) and Pacific Indemnity
Company (Pacific), appeal a summary judgment granted in favor of appellee, Lanco Turf
& Seeding, Inc. (Lanco). We affirm.



Factual and Procedural Background

 Interstate contracted with the City of Amarillo to upgrade a runway at the Amarillo
International Airport. (1) Because portions of the work would be subcontracted, Interstate
obtained a payment bond from Pacific to guarantee that subcontractors would be paid for
the work they furnished.

 Lanco entered into a subcontract with Interstate to seed, mulch, and water 80 acres
at the airport. (2) The Contract provided specifications for this subcontract work, which were
specifically incorporated into the Subcontract, requiring that a "good stand of grass of
uniform color and density" be established on the 80 acres. 

 Lanco began performing the work required under the Subcontract in April of 2002. 
After Lanco had seeded the acreage, Amarillo received significant rains. Because of the
rain, Interstate notified Lanco that the City was satisfied with the work and that watering
would not be required. Lanco submitted an invoice to Interstate that included a charge of
$110,400 for seeding, mulching, and watering the 80 acres, in accordance with the terms
of the Subcontract. (3) Upon receipt of the invoice, Interstate requested credit from Lanco for
the watering services that were not provided. Lanco refused to provide such credit. 
Interstate made a partial payment of $7,300, but did not pay the remaining balance of
$116,900. 

 Lanco filed suit against Interstate and Pacific for breach of contract and quantum
meruit. Interstate and Pacific filed answers in which they asserted the affirmative defense
of unjust enrichment and counterclaimed for declaratory judgment, promissory estoppel,
and breach of contract.

 After discovery, Interstate and Pacific filed motions for partial summary judgment on
their counterclaim for declaratory judgment. Lanco also filed a motion for summary
judgment. The trial court granted Lanco's motion, denied Interstate's and Pacific's motions,
severed Lanco's claim for attorney's fees, and ordered that Lanco recover from Interstate
and Pacific, jointly and severally, $116,900, plus 18 percent interest per annum from June
26, 2002 until paid. It is from the summary judgment in favor of Lanco that Interstate and
Pacific now appeal.

 By their sole issue, Interstate and Pacific contend that the trial court erred in granting
summary judgment in favor of Lanco. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119,
121 (Tex. 1970) (a general issue contending that the trial court erred in granting summary
judgment allows argument as to all grounds upon which summary judgment should have
been denied).

Standard of Review

 A traditional summary judgment, such as the one granted to Lanco, is proper when
the movant conclusively establishes that no genuine issue of material fact exists and,
therefore, the movant is entitled to judgment as a matter of law. See Tex. R. Civ. P.
166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). We review the
granting of traditional summary judgment using the standards set out in Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985): 

(1) The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. 


(2) In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


(3) Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor. 

 When both parties move for summary judgment and the trial court grants one motion
and denies the other, the appellate court reviews the summary judgment evidence of both
parties, determines all questions presented, and renders the judgment that the trial court
should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). 
If the trial court does not specify the basis on which it granted summary judgment, the
judgment will be affirmed if any of the grounds in the motion are meritorious. See State
Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

Contract Ambiguity

 The goal of a court in construing a contract is to determine and give effect to the
objective intention of the parties as expressed in the contract. See Gulf Ins. Co. v. Burns
Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000). When a contract is worded such that it can
be given a certain or definite legal meaning, it is not ambiguous and will be enforced as
written. See id. However, a contract is ambiguous if the terms of the contract are
susceptible to more than one reasonable interpretation. See Nat'l Union Fire Ins. Co. of
Pittsburgh v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Whether a contract is
ambiguous is a question of law. Id. If a contract contains an ambiguity, the granting of a
motion for summary judgment is improper because the proper construction of the contract
presents a genuine issue of material fact. Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983).

 The Subcontract defines the work to be performed by reference to the incorporated
Schedule A, which provides that Lanco's "work" was to seed, mulch, and water the 80
acres. Paragraph 1 of the Subcontract places upon Lanco the responsibility to complete
all of the work identified in Schedule A, specifically makes Schedule B incidental to
Schedule A, and incorporates the terms and conditions of the Contract into the
Subcontract. Paragraph 4 provides that Lanco "agrees to accept as full and final payment
. . . the amounts of compensation as defined in Schedule A . . . ." Further, paragraph 4
provides that Lanco "agrees to accept such . . . payment . . . as final payment in
consideration for the completion of all items, in full accordance with obligations and
responsibilities of this Subcontract Agreement and the Contract as it applies to the
Subcontractor's work" (emphasis added). Paragraph 4 further provides that Interstate has
the right to deviate or omit work from the Subcontract "as necessary to meet obligations
under the Contract." Any change in the work that would decrease the compensation to
Lanco "shall be as the parties agree." (4) Paragraph 5 of the Subcontract provides that
Interstate agrees to pay for the performance of the work required under the Subcontract
and that Lanco agrees to accept as its full and only compensation the sums of money
properly owed to it and as set forth in the Subcontract and any documents incorporated into
the Subcontract. Finally, in paragraph 26, the Subcontract incorporates "Schedule A to
Subcontract: Listed Subcontract items of work, prices and methods of compensation
therefor" and "Schedule B to Subcontract: Subcontract Special Provisions."

 Schedule A provides that Lanco shall do all things necessary to perform the work
described in Schedule A in accordance with the specifications and drawings contained in
the Contract and that Lanco shall be paid in accordance with the prices set forth in
Schedule A. As relevant to this appeal, Schedule A identifies item 39 as "T-901 [the
specifications for the seeding work contained in the Contract] Seed & Mulch & Water." Item
39 contains a "plan quantity" of 80, a unit price of $1,380, and a subtotal for all 80 units of
$110,400.

 Paragraph 13 of Schedule B provides that, "At the Contractor's option,
Subcontractor will perform Item #39B - Watering to Stand. The Contractor may elect to
use all or none of the total quantity." Interstate, in its appellate brief, also highlights
paragraph 9 of Schedule B which states, "Contractor agrees to pay for all work performed
by the Subcontractor, as directed by the Contractor, that is accepted by the Owner [City]." 

 When taken as a whole and attempting to give meaning to all of its provisions, the
Subcontract envisions that the successful completion of the project is to be assessed by
Lanco performing all of the work Interstate directed it to perform and by the City's
acceptance of the work. The Subcontract makes Lanco's watering of the 80 acres at the
election of Interstate, but does not provide that Interstate's election to forego watering
would effect the amount of compensation owed to Lanco, unless the parties agreed
otherwise. We acknowledge that Schedule A of the Subcontract includes watering as a
component of the "work" required to be performed by Lanco. However, the Subcontract
further provides that Interstate had authority to alter the work required of Lanco and
paragraph 13 of Schedule B specifically made Lanco's obligation to water subject to the
election of Interstate. Nothing in the Subcontract addresses or even implies that
Interstate's election to forego components of the "work" defined by the Subcontract would
affect Lanco's compensation, other than by agreement of the parties. When viewed as a
whole, the Subcontract provides that Lanco has performed the "work" required by the
Subcontract if (1) Lanco performed all work as directed by Interstate, (2) Lanco did "all
things necessary to perform the work" described in the Subcontract and in the Contract's
specification T-901, and (3) Lanco's work was accepted by the City. Upon completion of
the work, Lanco was entitled to the compensation identified in Schedule A as full and final
payment. Thus, so long as Lanco performed all work that Interstate directed it to perform,
the work conformed to the requirements of the Contract's specification T-901, and the work
was accepted by the City, Lanco is entitled to the compensation identified in item 39 of
Schedule A of the Subcontract. 

 Considering the Subcontract as a whole, we fail to see any provision that is
susceptible to two or more reasonable constructions. Therefore, we conclude that the
Subcontract is unambiguous and will enforce the Subcontract as written. See Gulf Ins. Co.,
22 S.W.3d at 423. We construe the contract to unambiguously entitle Lanco to recovery
of the full contractual compensation for the successful completion of the work. Further, the
Subcontract indicates that the work is successfully completed if Lanco followed the
directions of Interstate, conformed their work to the Contract's specifications, and the work
was accepted by the City. The record reflects that Lanco fulfilled each of these obligations. 
Therefore, Lanco is entitled to the compensation identified in the Subcontract. 

 Because the Subcontract specifically governs Lanco's rights to compensation, we
overrule Interstate and Pacific's affirmative defense of unjust enrichment. See Fortune
Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000) (when a valid, express contract
covers the subject matter of a dispute, there can be no recovery for unjust enrichment).

Interest

 Interstate contends that Lanco is not entitled to interest under the Subcontract and
that Lanco is further not entitled to attorney's fees. As the trial court severed the issue of
attorney's fees from the present dispute, that issue is not before us. The trial court also
ordered interest from June 26, 2002 at a rate of 18 percent per annum until paid. Interstate
and Pacific do not contest the amount of interest ordered by the trial court, (5) but rather
contend that Lanco's refusal to grant a credit for the watering services not provided made
a tender of payment for seeding and mulching futile and, as a result, the failure to pay is
excused and an award of interest is improper. 

 Interstate and Pacific cite Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565,
160 S.W.2d 509, 514 (1942), and Warrior Constructors, Inc. v. Small Business Inv. Co. of
Houston, 536 S.W.2d 382, 386 (Tex.Civ.App.-Houston [14th Dist.] 1976, no writ), to support
their contention that their failure to pay was excused where it was assumed that the partial
tender would not have been accepted. However, we find these cases inapposite. In
Kinzbach Tool, the excused party actually tendered the proper amount due in a timely
fashion, but this tender was rejected by the payee. The court held that the payee's
rejection of the proper payment excused the payor's failure to make subsequent payments
because, "The law does not require an actual tender when the party to whom the money
is due has signified in advance that he will refuse to accept it." Kinzbach Tool Co., 160
S.W.2d at 514. In Warrior Constructors, Inc., the court held that tender is excused where
a creditor has clearly indicated that he is unwilling to accept what is due in discharge of a
debt. See Warrior Constructors, Inc., 536 S.W.2d at 386. However, in each of these
cases, the payor was excused from tendering payment because the payee had refused to
accept the amount that was actually due. Here, Interstate never offered payment to Lanco
in the amount that was due under the Subcontract. 

 Additionally, Interstate and Pacific contend that it should be excused from interest
on the partial payment that it was willing to tender because it was evident that such a
tender would not be accepted by Lanco. However, as evidence for this proposition,
Interstate and Pacific cite Lanco's refusal to give a credit for the watering services, Lanco's
continued billing and demand letters for the full amount owed under the Subcontract, and
summary judgment evidence that Interstate and Pacific would have paid an invoice for
$58,400 if one had been received. We fail to see how any of this evidence establishes that
Lanco would not have accepted a partial payment of the amount owed had such a payment
been offered. 

 Therefore, having found that payment was not tendered by Interstate and Pacific in
the amount due and payable to Lanco in a timely fashion and that Interstate and Pacific
have failed to establish that their failure to make such a timely tender was excused, we
affirm the trial court's award of interest to Lanco.Conclusion

 We affirm the judgment of the trial court. 


 Mackey K. Hancock

 Justice

1. Further reference to the contract between the City of Amarillo and Interstate will
be by reference to the "Contract."
2. Further reference to the contract between Interstate and Lanco will be by reference
to the "Subcontract."
3. The invoice actually identified $124,200 as the amount owed, which included
seeding of an additional 10 acres that the parties agreed to separately from the
Subcontract. While the parties agreed that Lanco would perform this additional work, the
parties dispute the amount of compensation Lanco is owed for performing this work. As
with the Subcontract, Interstate contends that Lanco is not entitled to payment for watering
services not provided on these additional 10 acres. Lanco contends that it is entitled to the
"per unit" price identified in Schedule A of the Subcontract for the additional 10 acres. 
Thus, our determination of whether the Subcontract entitles Interstate to a credit for the
watering that Lanco did not perform will also determine the amount of compensation due
Lanco for this additional work. 
4. The Subcontract contains a specific procedure imposing upon Lanco certain
responsibilities should any changes to the work require additional compensation. However,
the only provision that relates to a decrease in the compensation owed is the "as the
parties agree" provision. This provision goes on to require Lanco to complete the work,
even if a dispute arises, but in no way addresses a decrease in compensation arising after
all items of work had already been completed.
5. Paragraph 11 of Schedule B of the Subcontract provides that "All invoices are due
45 to 60 days after the invoice date. Any past due unpaid sums . . . shall bear interest at
the rate of 18% per annum until paid."


i-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-06-0157.CV%20opinion%202_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-06-0157.CV%20opinion%202_files/header.htm") fcs;
 mso-endnote-separator:url("07-06-0157.CV%20opinion%202_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-06-0157.CV%20opinion%202_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-06-0157.CV%20opinion%202_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-06-0157.CV%20opinion%202_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-06-00157-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



APRIL
25, 2011

 



 

RANCHO LA VALENCIA, INC. AND

CHARLES R. RANDY TURNER, APPELLANTS

 

v.

 

AQUAPLEX, INC. AND

JAMES EDWARD JONES, JR., APPELLEES 



 



 

FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY;

 

NO. GN304287; HONORABLE SUZANNE COVINGTON, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

ORDER ON BANKRUPTCY

 

            This Court has received notice that appellant, Charles R.
Randy Turner, has filed for bankruptcy protection in Cause No. 10-38381 in
the United States Bankruptcy Court for the Northern District of Texas.  Attached to this notice is a copy of the
Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines
indicating that the case was filed on December 13, 2010.  See Tex.
R. App. P. 8.1.  Thus, pursuant to
the statutory automatic stay, we suspend this appeal.  See 11 U.S.C.A. § 362(a) (West 2004
& Supp. 2010); Tex. R. App. P.
8.

            We
abate this appeal until further order of this Court.  The parties are directed to take such action
as is appropriate to advise the Clerk of this Court of any change in the status
of Turners bankruptcy proceeding which would affect the status of this appeal,
including but not limited to the filing of a motion to reinstate or sever
pursuant to Rule 8.3.  See Tex.
R. App. P. 8.3.

 

 

Per Curiam